UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
UNITED STATES OF AMERICA,          :
                                   :    17-CR-123 (LAP)
        -v.-                       :
                                   :    MEMORANDUM
                                   :    & ORDER
JEFFREY FERNANDEZ,                 :
                                   :
            Defendant.             :
------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

        Before the Court is Defendant Jeffrey Fernandez's motion for
compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (dkt.
no. 1024), the Government's opposition letter (dkt. no. 1035),
Defendant's response to the Government's letter (dkt. no. 1039),
and Defendant's supplemental motion, entitled "Motion
3582(c)(1)(A)" (dkt. no. 1083).  For the reasons set out below,
Defendant's motions are denied.

**I.    Background**

   **a. Offense Conduct and Criminal History**

        The Defendant was a member of "075:" a large, well-organized,
violent gang of drug dealers, members of which have long controlled
the drug trade and committed brazen criminal acts throughout the
neighborhood around Weeks Avenue in the Bronx.  (See United States
Probation Office's Presentence Investigation Report ("PSR") ¶¶ 19-
25, 93.)  As a member of the organization for several years, the
Defendant sold crack cocaine principally for Rafael Romero, a/k/a

1

"Co-D," on and around Weeks Avenue, East 175th Street, and the Grand Concourse, including sales to undercover officers in January and March 2016. (Id. ¶¶ 93, 95, 117.) The Defendant split the latter sale with co-defendant Jesus Mata, a/k/a "Junior," so both could profit from the transaction. (Id. ¶¶ 34, 95.) Apart from these sales, the Defendant was arrested eight times between March 2015 and January 2017—three stemming from his possession of marijuana and five stemming from sales of crack cocaine, after which police found the Defendant to be in possession of 32, 11, 3, and 10 additional bags of crack; and three more stemming from possession of marijuana. (Id. ¶ 94.) Almost all of these offenses occurred in 075-controlled territory. (Id.)

The Defendant also had significant contact with 075 firearms and was directly involved in multiple acts of violence. (Id. ¶ 95.) Like all members of the group, the Defendant had access to communal firearms that were kept in 075 territory stash spots for use as needed to defend their block or during attacks on other groups. (Id. ¶ 24.) On or about May 9, 2015, the Defendant used one of those guns. (Id. ¶ 96.) Specifically, he took a firearm stored in a stash spot that Rafael Romero used to store drugs and guns, brought that firearm to the vicinity of East 179th Street and the Grand Concourse (a busy, six-lane road that runs north-and-south through the entire Bronx), and fired approximately eight shots at an individual with whom he had a prior altercation. (Id.)

Fortunately, the Government is reportedly not aware of any injuries resulting from that shooting. (Id.) Later that summer, on or about July 24, 2015, at approximately 1:30 in the afternoon, the Defendant accompanied Daryl Simon, a/k/a "D-Money," when Simon shot Maxamillion Mercado, a/k/a "Bully," in the neck, in furtherance of Romero's efforts to increase his and 075's influence over drug activity on East 176th Street and Anthony Avenue. (Id. ¶¶ 96, 98.) The shooting occurred in a populated neighborhood in broad daylight; and the Defendant supported Simon as he fired approximately five shots while chasing Mercado down the street. (See dkt. no. 1035 at 2.)

The Defendant also regularly associated with other 075 members who he knew to carry, store, and use firearms in and around 075's territory. (PSR ¶ 96.) Between November 2014 and January 2017, 075 members and associates (including the Defendant) were involved in at least seven shootings during which at least one person was struck with a bullet, as well as other discharges of firearms in which no victims were identified by law enforcement. (See id. ¶ 25; dkt. no. 1035 at 2.) As detailed above, the Defendant participated in and benefited from this rampant gang violence.

Finally, on the day most arrests were made in this case, March 15, 2017, police went to the Defendant's home, at which time the Defendant fled out a back door and absconded. (PSR ¶ 97.) Despite

being on clear notice that he was under indictment and subject to arrest, the Defendant remained a fugitive for 16 months, forcing law enforcement to expend time and resources trying to locate him in New York and other states, including New Hampshire, where he was finally arrested.  (Id.; dkt. no. 1035 at 2.)

### b. Plea and Sentencing

Pursuant to an agreement with the Government, the Defendant pled guilty on November 13, 2018, to one count of conspiring to distribute crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C); and one count of using and carrying a firearm during and in relation to a drug-trafficking crime, and possessing a firearm in furtherance of such a crime, which firearm was brandished, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) and (ii). (Id. ¶¶ 6, 9, 15-16.)  In the plea agreement, the parties stipulated that these offenses carried a combined mandatory minimum sentence of seven years imprisonment and that the advisory Guidelines range was 130 to 141 months imprisonment, based on an offense level of 23 and a Criminal History Category of I.  (Id. ¶ 16.)  The Probation Office agreed with this calculation and recommended a sentence of 130 months imprisonment.  (Id. ¶¶ 138-155, 192; PSR at 57.)

On May 2, 2019, after hearing from counsel for the Defendant, who highlighted the Defendant's difficult childhood, his learning disability, and poor influences in his community, the Defendant,

4

and the Government, the Court sentenced the Defendant to 118 months imprisonment.  (<u>See</u> dkt. no. 694.)  The Court noted that a significant sentence was warranted because: 1) despite the Defendant's repeated drug-related arrests, he continued in his unlawful conduct; 2) the Defendant's conduct was very serious in aiding and abetting a shooting, in which the victim was shot in the neck, and committing another shooting where the Defendant discharged eight shots on the Grand Concourse; and 3) there was a need for general deterrence.  (Sent. Tr. [dkt. no. 704] at 18:1-5, 19:7-22.)  But, the Court also noted that the Defendant appeared committed to turning his life around and becoming a productive member of society, as evidenced by his willingness to take advantage of the programs available to him while incarcerated. (<u>Id</u>. at 20:1-11.)  Balancing all of these factors, the Court varied downwardly from the bottom of the applicable Guidelines range and imposed a sentence of 118 months imprisonment.  (<u>Id.</u> at 21:14-18.)

### c. The Defendant's Request to the Bureau of Prisons and Instant Motion

On February 16, 2023, the Defendant filed a request with the Bureau of Prisons ("BOP") asking for compassionate release.  (Dkt. no. 1035, Ex. A.)  When asked to identify conditions that constituted "Extraordinary/Compelling Circumstances," the Defendant checked "Medical Circumstances" and wrote, "Asthma." (<u>Id.</u>)  Then, when asked to describe the medical condition or non-medical circumstance, the Defendant frankly stated, "I AM FILING

A COMPASSIONATE RELEASE MOTION WITH THE COURT AND NEED TO EXHAUST
MY REMEDIES WITH THE WARDEN."  (Id.)  On May 28, 2023, the BOP
denied the Defendant's request.  (See id., Ex. B.)

In June 2023, the Defendant filed the instant Motion.  (Dkt.
no. 1024.)  Contrary to his request to the BOP, the Defendant makes
no mention of asthma.  (See id.)  Instead, the Defendant asserts
that the BOP conditions during the pandemic and the lack of
attention to his mental health needs constitute extraordinary and
compelling reasons to justify his release.  (See id. at 2-6.)

## II.  **Applicable Law**

Under 18 U.S.C. § 3582, as amended by the First Step Act, the
court "may not modify a term of imprisonment once it has been
imposed except that":

> [T]he court, upon motion of the Director of the Bureau
> of Prisons ["BOP"], or upon motion of the defendant after
> the defendant has fully exhausted all administrative
> rights to appeal a failure of the [BOP] to bring a motion
> on the defendant's behalf or the lapse of 30 days from
> the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce
> the term of imprisonment (and may impose a term of
> probation or supervised release with or without
> conditions that does not exceed the unserved portion of
> the original term of imprisonment), after considering
> the factors set forth in section 3553(a) to the extent
> that they are applicable, if it finds that . . .
> extraordinary and compelling reasons warrant such a
> reduction . . . and that such a reduction is consistent
> with applicable policy statements issued by the
> Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Phillibert, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction. See U.S.S.G. § 1B1.13.

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the [BOP],' see U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236

(2d Cir. 2020)).  As a result, the Court of Appeals explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236.  Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion.  United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions."  Corbett, 2023 WL 8073638, at *3 (citing U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)).  "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated."  Id.  Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release.  Id.  These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long.

See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. § 3582(c)(1)(A)(i). The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing Butler, 970 F.2d at 1026); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable § 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." United States v. Giattino, No. 23-6918-cr,

2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); see also United States v. Ramirez, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

The statute also "sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" Keitt, 21 F.4th at 71 n.2 (quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant Sentencing Guidelines policy statement, U.S.S.G. § 1B1.13, sets forth requirements that must be met before a court can reduce a sentence. See 18 U.S.C. § 3582(c)(1)(A). As relevant here, section 1B1.13(b)(6) provides as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The defendant bears the burden of proving that he is entitled to the requested relief under Section 3582(c)(1)(A). See United

States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992); accord United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021).

### III. Discussion

#### a. Exhaustion of Administrative Remedies

The Government contends that the Defendant has not exhausted his administrative remedies because in his request to the BOP he made a different claim than in the instant Motion. (See dkt. no. 1035 at 7.) Specifically, in his letter to the Warden he claimed that his asthma was a medical condition that constituted an extraordinary and compelling circumstance (dkt. no. 1035, Ex. A), whereas his Motion asserts that the BOP conditions during the pandemic and the lack of attention to his mental health needs constitute extraordinary and compelling reasons justifying his release (dkt. no. 1024 at 4-6).

While courts in this district have not been of one mind as to whether Section 3582(c)(1)(A) requires a defendant to exhaust administrative remedies with respect to each issue raised in a motion for compassionate release, e.g., United States v. Gunn, No. 06 Cr. 911, 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022), the Court adopts Judge Sidney H. Stein's well-reasoned analysis in United States v. Torres, 464 F. Supp. 3d 651, 655-56 (S.D.N.Y. 2020), holding the contrary—that issue exhaustion is not required. Accordingly, the Court finds that the Defendant has exhausted his administrative remedies.

### b. Extraordinary and Compelling Reasons

The Defendant argues that the conditions of his confinement during the COVID-19 pandemic were so severe that he is entitled to a reduction in his sentence. (Dkt. no. 1024 at 8-13.) He does not, however, argue that his conditions of confinement were any more severe than that of any other inmate during the pandemic. Courts have held that conditions of confinement during the pandemic are insufficient to constitute extraordinary and compelling circumstances. See e.g., United States v. Padilla, No. 18 Cr. 454-6, 2020 WL 3958790, at *1 S.D.N.Y. July 13, 2020 (denying motion for compassionate release while recognizing that petitioner had "identified sub-optimal conditions of confinement at FCI Elkton during the pandemic"); United States v. Koons, 455 F. Supp. 3d 285, 291 (W.D. La. 2020) ("the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."); United States v. Lischewski, 2020 WL 6562311, at *2 (N.D. Cal. Nov. 9, 2020) (relief is not available based on conditions of confinement that apply to all inmates and are necessitated by the need to mitigate the spread of the virus).

Indeed, the Court notes that the Defendant complains that he was without a cellmate for an extended period during the pandemic.

(Dkt. no. 1024 at 15).  If anything, however, that circumstance was probably beneficial to the Defendant in that he was not living in close proximity to another individual and thus his chances of infection were significantly reduced.

Second, the Defendant asserts that the BOP facilities in which he has been housed have insufficiently addressed his mental health needs.  The Defendant primarily makes two claims: (1) that he has developed anxiety (dkt. no. 1024 at 17-18); and (2) he has not been able to take the programs he desires (id. at 24-26).  These claims are undercut by BOP records.  With respect to the Defendant's claim of suffering from anxiety, in January 2023, the Defendant had a medical examination and the records note, "Mental Health-Pt denies anxiety and depression."  (See dkt. no. 1035, Ex. C at 4.)[1]  The records further note:

> He denied any current or recent mental health concerns. FERNANDEZ seems to be adjusting adequately to this institution and he does not evidence any signs of mania, psychosis, or acute distress.  His mental status appeared to be within normal limits.  He specifically stated he did not have suicidal ideation, intent, or plan.  He appears to be negative for the presence of chronic mental health diagnoses that would require an elevated Mental Health Care Level assignment.

(Id. at 66.)  One month earlier, in December 2022, the Defendant underwent a mental health evaluation, and the records note, "Mood: Appropriate to Content."  (Id. at 14.)  Thus, Defendant's own

---

[1] Because the records contain the Defendant's sensitive medical information, they have been filed under seal.

words, reflected in his medical records, belie his current mental health complaints.  This claim does not demonstrate extraordinary and compelling circumstances.

With respect to programs, the Defendant's records indicate that he has been enrolled in a great number of educational programs, including ones involving Carpentry, Spending and Saving, IRS/Tax class, and Men's Health.  (See dkt. no. 1035, Ex. D.) While the Defendant might have preferred additional courses or different courses, that preference is insufficient to constitute extraordinary and compelling circumstances.

### c. 3553(a) Factors

Even if the Defendant had established extraordinary and compelling circumstances, the 3553(a) factors counsel against early release.  He participated in a long-running armed narcotics conspiracy on Weeks Avenue in the Bronx.  In connection with that conspiracy, Defendant sold crack-cocaine and was involved in at least two shootings.  The damage done to the Defendant's community by the drugs he sold and the danger posed to that community by the gun violence undertaken by Defendant and his co-conspirators require that Defendant serve his entire 118-month sentence. Considerations of general and specific deterrence require the same.

IV.  **Conclusion**

For the reasons set forth above, Defendant's motions pursuant to 18 U.S.C. § 3582(c)(1)(A) (dkt. nos. 1024, 1083) are denied.

The Clerk of the Court shall close docket numbers 1024, 1039, and 1083 and shall mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:    New York, New York
          August 12, 2025

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge